UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| CRYSTAL RAMSEY, | ) | |
| | ) | Case No. 1:09-CV-233 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| CHATTANOOGA HOUSING AUTHORITY, | ) | |
| ROBERT ZENDEJAS, JAMES AVERY, AND | ) | |
| CITY POLICE OFFICER D. RAWSON AND | ) | |
| CITY OF CHATTANOOGA | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM**

Before the Court are motions for summary judgment filed by Defendant City of Chattanooga ("City") and D. Rawson ("Officer Rawson") (Court File No. 32) and by Defendants James Avery ("Officer Avery") and Robert Zendejas ("Officer Zendejas") (Court File No. 34). The defendants argue there are no genuine disputes of material fact and they are entitled to judgment as a matter of law. Plaintiff Crystal Ramsey ("Ramsey") late-filed a response to the motions (Court File No. 40), and Officer Avery and Officer Zendejas filed a reply (Court File No. 43). For the reasons stated below, the Court will **GRANT** the City's and Officer's Rawson's motion for summary judgment (Court File No. 32). All claims against the City and Officer Rawson will be **DISMISSED**. The Court will **GRANT IN PART** and **DENY IN PART** Officer Avery's and Officer Zendejas's motion for summary judgment (Court File No. 34). All claims against Officer Zendejas will be **DISMISSED.** The Court will also **DISMISS** Ramsey's claim for property damage in favor of Officer Avery.

## I. RELEVANT FACTS

### A. Ramsey's Version of Events

On or about 12:45 a.m. on August 2, 2008, Officer Avery arrived outside of Ramsey's residence at the Emma Wheeler Homes to respond to a call regarding a large crowd of juveniles (Court File No. 20). There, Officer Avery began conducting a search and seizure of a minor suspect (*id.*). Ramsey, who came outside of her home after hearing a loud noise, was frightened as she observed the search and seizure take place (Court File No. 1-1).[1] As a result, she attempted to contact a 911 operator because she felt "the situation had gotten out of hand." (*id.*).

When Officer Avery overheard Ramsey talking to the 911 operator, he ran up on to Ramsey's porch and slapped Ramsey on the side of her face (*id.*). According to Ramsey, this happened a second time as she attempted to call 911 again (Court File No. 40-1). At some point, the 911 dispatcher called Ramsey to ask why the call was interrupted (*id.*).

Around the same time, Officer Avery walked onto Ramsey's porch with the minor suspect. He told Ramsey and the minor suspect to sit on Ramsey's front porch with their backs against her home (*id.*). Officer Avery asked to see Ramsey's identification, and at some point, Officer Zendejas arrived (*id.*). When Ramsey asked Officer Avery if they were "done," he responded "yes" (*id.* at 20). Ramsey then went back inside her home to call her father (*id.* at 21). Once inside, Ramsey only shut her screen door. After being inside for only a few seconds, Ramsey heard the screen door open, and Officer Avery grabbed Ramsey from behind (*id.*).

Officer Avery then forced Ramsey onto the concrete where he put his knee on her lower back while handcuffing her (Court File No. 1-1). Both Officers Avery and Zendejas began hitting

---

[1] It is also clear from the evidence Ramsey recognized the minor suspect.

2

Ramsey and telling her to stop resisting the officers (*id.*). Ramsey was then placed under arrest. She did not know the nature of her charge at that time.

Once she was in Officer Avery's car, Officer Rawson arrived on the scene (Court File No. 40-1 at 25). She called for him to come over to her where she explained that the other officers had hit her (*id.*). Officer Rawson seemed unwilling to do anything about her allegations. When Officer Avery got into his vehicle, he backed out of Ramsey's yard into Ramsey's father's car, which Ramsey used on a regular basis (*id.* at 26).

### B. Officer Avery's Version of Events

Officer Avery responded to a call involving a crowd of juveniles at the Emma Wheeler Homes (Court File No. 36-7). As a result, he ended up chasing one of the minor suspects, who was in violation of curfew (*id.*). As he searched the minor suspect outside of Ramsey's residence, she came out of her home, began yelling at Officer Avery, and verbally interfered with his search (Court File Nos. 20, 21-2).

Officer Avery advised Ramsey more than once he was a police officer, and he asked her to go back inside her home (Court File No. 36-7). Although she initially complied with Officer Avery's instructions, Ramsey "reemerge[d] from her dwelling multiple times to interfere with [his] investigation" (*id.* at 4). Subsequently, Officer Avery informed Ramsey if she continued to "verbally interfere with [his] reasonable attempts to conduct an investigation," she would be placed under arrest for disorderly conduct (*id.* at 4). Indeed, Ramsey did not cease her actions, and Officer Avery told her that she could not leave the scene because she was going to be placed under arrest (*id.*).

3

At some point after this, Ramsey called 911 (Court File No. 5).² Ignoring Officer Avery's instruction that she could not leave, Ramsey walked inside her home (Court File No. 36-7). Because Officer Avery believed Ramsey would attempt to lock the door behind her, and because he believes "it is a potentially life threatening tactical mistake to allow a suspect . . . to return to . . . her dwelling while . . . she is being investigated," he followed (*id.* at 5). As Officer Avery opened Ramsey's screen door, she turned and shoved him in the chest (*id.*). In response, Officer Avery grabbed Ramsey's wrist (*id.*). Officer Zendejas, who had just arrived, witnessed the struggle and grabbed Ramsey's left wrist while Officer Avery attempted to employ an arm bar technique (*id.*).

During this time, Ramsey continued to resist arrest, and she attempted to kick Officer Avery (*id.*). All three of the individuals ended up on the front lawn where "Officer Zendejas caught [] Ramsey to prevent her from sustaining any injury from falling" (*id.* at 6).

### C. Officer Zendejas's Version of Events

Officer Zendejas arrived on the scene to assist Officer Avery in conducting his investigation of the minor suspect (Court File No. 36-8). Shortly after he arrived, he heard Officer Avery instructing Ramsey "not to go anywhere" because she was going to be placed under arrest for disorderly conduct (*id.* at 3). She responded by threatening to call "the real police" (*id.*).

Officer Avery then walked over to Ramsey and attempted to grab her wrist. Ramsey pulled away from him, and opened the screen door of her apartment (*id.*). Because Officer Zendejas was concerned about the safety risks of allowing Ramsey to return to her home, he attempted to assist Officer Avery in effectuating Ramsey's arrest. Officer Zendejas grabbed her left wrist behind her back while he waited for Officer Avery to gain control of Ramsey's other wrist (*id.*). He also

---

²Officer Avery denies slapping Ramsey (Court File No. 5).

4

managed to catch Ramsey as she stumbled because she was resisting arrest (*id.*).

### D. Officer Rawson's Version of Events

When Officer Rawson arrived on the scene, Ramsey had already been arrested and placed in Officer Avery's vehicle. Ramsey called for Officer Rawson to come over to her (Court File No. 32-2). It was clear to him Ramsey was very angry; however, he does not recall her saying she had been assaulted by anyone (*id.*). When Officer Rawson asked Ramsey why she had called 911, she stated she wanted the assistance of the police (*id.*). In response, Officer Rawson explained the Chattanooga Housing Authority officers were police officers (*id.*).

After determining he was not needed because Ramsey was already in custody, Officer Rawson did not feel there was anything for him to do. Nonetheless, he did complete a Traffic Crash Report after Officer Avery backed into the vehicle registered to Ramsey's father (*id.*).

## II. STANDARD OF REVIEW

As a result of her arrest, Ramsey brought suit against the Chattanooga Housing Authority, Officer Avery, Officer Zendejas, Officer Rawson, and the City of Chattanooga (Court File No. 1-1). She alleges Defendants deprived her of her rights to due process of law and to be free from the use of excessive force, in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments (*id.*). Ramsey also alleges Defendants are guilty of intentional infliction of emotional harm and negligent infliction of emotional harm pursuant to the Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101 *et seq*. Finally, Ramsey sues Officer Avery and the Chattanooga Housing Authority for property damage in the amount of one thousand five hundred dollars ($1,500.00) for damage to her vehicle, and Officer Rawson for failure to report abuse (*id.*). This Court has granted summary

5

judgment in favor of the Chattanooga Housing Authority (Court File No. 38). The other Defendants now move this Court for judgment as a matter of law (Court File Nos. 32, 34).

Summary judgment is proper when the pleadings, discovery, and any affidavits "show there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.,* 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2, 3 (E.D. Tenn. November 4, 2009) (explaining the Court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of the case, the movant can meet its burden by pointing out such failure to the Court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v.*

6

*Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should enter summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. ANALYSIS

### A. Section 1983 Claims

In her complaint, Ramsey asserts violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments (Court File No. 1-1). "Section 1983 creates a federal cause of action against state or local officials who deprive a person of a federal right while acting under the color of state law." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005); *see also Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 611 (2008). Construing Ramsey's complaint in her favor, the only civil rights violations alleged are that of excessive force and violation of substantive due process rights.[3]

#### 1. Excessive Force

In order to bring a successful claim of excessive force, which is properly analyzed under the Fourth Amendment, Ramsey must "demonstrate that a seizure occurred, and that the force used in effecting the seizure was objectively unreasonable." *Rodriguez v. Passinault*, 637 F.3d 675, 680 (6th Cir. 2011). Here, Ramsey alleges both Officer Avery and Officer Zendejas are liable for the use of excessive force. To determine whether there was excessive force, the Court must view the "facts and circumstances of the case" from the "perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007) (citing *Graham v.*

---

[3] It is unclear to what extent Ramsey asserts a Fifth Amendment or Eight Amendment violation. Admittedly, in Ramsey's response to the motions for summary judgment, she characterizes this matter as an "excessive force" case (Court File No. 40 at 5).

7

*Connor*, 490 U.S. 386, 395-96 (1989)). Indeed, "an officer making an . . . arrest has the right to use some degree of physical coercion or threat thereof to effect it." *Id.* (internal citations omitted).

In other words, the Court must determine whether the officer's use of force was "objectively reasonable" under the "totality of the circumstances." *Id.* To make such determination, the Court should "pay particular attention to 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight.'" *Graham*, 490 U.S. at 396; *see also Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010) (citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001)). This is not an "exhaustive list," and the inquiry ultimately turns on whether the seizure was reasonable under the "totality of the circumstances." *Slusher v. Carson*, 540 F.3d 449, 455 (6th Cir. 2008). In their motion for summary judgment (Court File No. 34), both Officer Avery and Officer Zendejas argue there is no genuine dispute as to whether their actions were objectively reasonable. In the alternative, both officers assert they are entitled to qualified immunity.

Considering their claims for qualified immunity, this Court will first determine whether either officer violated Ramsey's constitutional right against excessive force. *Fox*, 489 F.3d at 235 (citing *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *receded from by Pearson v. Callahan*, 555 U.S. 223 (2009) (holding "while the sequence set forth [in *Saucier*] is often appropriate, it should not longer be regarded as mandatory")). If Ramsey can establish such violation, then this Court will decide whether such right was clearly established. *Id.*

### a. Officer Avery

In her complaint, Ramsey asserts Officer Avery utilized excessive force when he (1) slapped Ramsey twice for attempting to call 911 and (2) grabbed Ramsey from behind, threw her on the

8

ground, and began beating her for the purpose of handcuffing her (Court File No. 1-1). In response, Officer Avery argues Ramsey "was not 'seized' or under arrest during the two times she alleges . . . Officer Avery slapped the phone from her hand" (Court File No. 35 at 11). While Ramsey does seem to concede she was free to go inside her home at that time, "a seizure of the person within the meaning of the Fourth and Fourteenth Amendments occurs when, 'taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Kaupp v. Texas*, 538 U.S. 626, 629 (2003) (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991)).

Therefore, considering both instances of force, the Court finds there is a genuine dispute regarding whether Officer Avery employed excessive force. In particular, Ramsey contends she came out of her home because she heard a "loud noise" (Court File No. 36-1 at 18). Because she was concerned about the way Officer Avery was accosting the minor suspect, she decided to call 911 (*id.* at 22). She does not contend she was interfering with Officer Avery's investigation as he asserts. Rather, when she told Officer Avery she was calling the police, he allegedly "smacked" her on the side of her face to prevent her from making a call (*id.* at 24). Applying the *Graham* factors and viewing the facts in a light most favorable to Ramsey, there is no indication Ramsey posed an immediate threat to Officer Avery while she was standing on her porch. Even if Ramsey were yelling and screaming, this Court cannot find that no reasonable jury could find in her favor.

Later, when Ramsey attempted to go back inside her home, she alleges Officer Avery "opened her screen door and grabbed her from behind using one hand on her arm and one hand on the back of her neck forcing her to exit her house" (Court File No. 1-1 at 3). He then forced Ramsey

9

onto the concrete where he put his knee on her lower back while handcuffing her (*id.*). Finally, Ramsey contends Officer Avery, along with Officer Zendejas, "began hitting her and yelling" at her, telling Ramsey to stop resisting them (*id.*). According to Ramsey, this "beating" lasted more than two minutes (*id.*).[4] Crediting Ramsey's testimony, it is not clear whether Ramsey "was neither belligerent nor violent in any of [her] dealings" with Officer Avery. *Howard v. Wayne County Sheriff's Office*, No. 09-2171, 2011 WL 1130395, at *7 (6th Cir. March 29, 2011). The fact she admits the officers told her to stop resisting suggests she may not have been as passive as she alleges. Nonetheless, Ramsey asserts the Officer Avery beat her for at least one minute, and the Court finds this allegation creates a genuine issue with regards to the use of force on the part of Officer Avery.

In regards to the issue of qualified immunity, the Court finds summary judgement is not appropriate as well. A police officer may be entitled to qualified immunity unless his conduct "violate[d] a clearly established statutory or constitutional right of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Kijowski v. City of Niles*, 372 F. App'x 595, 601 (6th Cir. 2010) (citing *Saucier*, 533 U.S. at 202). A plaintiff may show that a right was clearly established by showing (1) the violation "was sufficiently obvious under the general standard of constitutional care" or (2) the officer failed to "adhere to a particularized body of precedent that squarely governs the case." *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir.

---

[4]In her deposition testimony, Ramsey alleges she was on the ground for approximately ninety seconds (Court File No. 40-1 at 25).

10

2005) (internal citations and quotations omitted). Indeed, "the right to be free from physical force when one is not resisting the police is a clearly established right." *Wysong v. City of Heath*, 260 F. App'x 848, 856 (6th Cir. 2008). Because the parties dispute whether Ramsey was resisting arrest, the legal question of immunity is "completely dependent on which view of the facts the jury believes." *See Rodriguez*, 637 F.3d at 689. Therefore the Court will **DENY** Officer Avery's motion for summary judgment with respect to Ramsey's claim of excessive force.

### b. Officer Zendejas

Ramsey asserts Officer Zendejas participated in the "beating" as Officer Avery tried to handcuff her. However, during her deposition she testified the only thing she knew for a fact was Officer Zendejas put his knee on her shoulder (Court File No. 36-1 at 42-43). In addition, she testified she saw Officer Zendejas walking over as Officer Avery began to hit her (*id.*). Construing these facts in Ramsey's favor, she has failed to raise a genuine dispute of fact as to whether Officer Zendejas used excessive force. Even if he placed his knee on her shoulder, it seems he did so to help neutralize Ramsey and place her in handcuffs. *See e.g., Goodrich v. Everett*, 193 F. App'x 551, 556 (6th Cir. 2006). Accordingly, the Court will **GRANT** summary judgment in favor of Officer Zendejas with respect to Ramsey's excessive force claim.

### 2. Substantive Due Process

The only federal civil rights violation Ramsey seems to allege against Officer Rawson is that he failed to assist her or report any abuse on the part of the other officers (Court File No. 1-1 at 5). Indeed, Ramsey does not assert Officer Rawson used excessive force against her or had any involvement in her arrest. "The Fourteenth Amendment's due process provision has a substantive component that guarantees 'protection of the individual against arbitrary action of government.'"

11

*Jones v. Byrnes*, 585 F.3d 971, 976 (6th Cir. 2009) (*Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)). This clause, however, generally does not guarantee individuals an "affirmative right to state protection." *Culp v. Rutledge*, 343 F. App'x 128, 133 (6th Cir. 2009); *see also DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 198 (1989); *Mitchell v. McNeil*, 487 F.3d 374, 376 (6th Cir. 2008) (explaining "mere negligence on the part of governments and their agents does not provide plaintiffs with a ticket to federal court to seek substantive dues process relief"). To find Officer Rawson violated Ramsey's substantive due process rights, Ramsey "must show [he] possessed a purpose to cause harm, such that [his] actions were sufficiently arbitrary and reckless that they shock the conscience." *Draw v. City of Lincoln Park*, 491 F.3d 550, 555 (6th Cir. 2007).

Here, crediting Ramsey's testimony, it is clear Officer Rawson did not witness the alleged constitutional violations committed by Officer Avery and Officer Zendejas. In addition, Ramsey does not indicate Officer Rawson caused her any harm or that he failed to investigate her claims "for intentional, malicious or reckless reasons." *Mitchell*, 487 F.3d at 378. More importantly, "there is no statutory or common law right, much less a constitutional right, to an investigation." *Id.* Accordingly, the Court will **GRANT** summary judgment in favor of Officer Rawson as to this claim.

### 3. Municipal Liability

The City of Chattanooga moves this Court for summary judgment in its favor on the ground of municipal liability (Court File No. 32). Indeed, Ramsey has failed to allege the City has a custom or policy which caused a violation of Plaintiff's civil rights pursuant to 42 U.S.C. § 1983. "Municipalities are liable for harms resulting from a constitutional violation only when the injury resulted from an 'implementation of [the municipality's] official policies or established customs.'" *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S.

658, 708 (1978) (Powell, J. concurring)). In other words, to survive a summary judgment motion, Ramsey must show "the alleged federal right violation[s] occurred because of a policy or custom" adhered to by City of Chattanooga officers. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

In other words, Ramsey must "offer[] proof of policymaking officials' knowledge and acquiescence to [an] established practice" leading to a constitutional violation. *Spears*, 589 F.3d at 256. Ramsey must also establish a "'direct causal link' between the policy and the alleged constitutional violation in order to show that the municipality's 'deliberate conduct' can be deemed the 'moving force' behind the violation." *Graham ex. rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (citing *Waters v. City of Morristown*, 242 F.3d 353, 362 (6th Cir. 2001)). Here, Ramsey does not offer any evidence to raise a genuine issue of material fact. In addition, because the Court finds no constitutional violation occurred on the part of Officer Rawson, Ramsey's § 1983 claim against the City must fail. Accordingly, the Court will **GRANT** summary judgment in favor of the City as to this claim.

    **B.**    **State Law Claims**

        **1.**    **Infliction of Emotional Harm**

Ramsey also argues all of the defendants are guilty of intentional and negligent infliction of emotional harm (Court File No. 1-1). In order to be held liable on a claim for intentional infliction of emotional distress, "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). "A negligence claim requires that a plaintiff establish: (1) a duty of care owed to plaintiff by defendant;

13

(2) conduct falling below that standard of care resulting in a breach of duty by defendant; (3) an injury or loss; (4) cause in fact; and (5) proximate or legal cause." *Doe v. Univ. of South*, No. 4:09-cv-62, 2011 WL 1258104, at 21 (E.D. Tenn. March 31, 2011). However, "when 'all of the material allegations involve the intentional, deliberate acts of the defendants,' a claim of negligent infliction of emotional distress does not exist." *Alexander v. Newman*, 345 F. Supp. 2d 876, 887 (W.D. Tenn. 2004) (citing *Tidman v. Salvation Army*, No. 01-A-01-9708-CV00380, 1998 WL 391765, at *3 (Tenn. Ct. App. July 15, 1998)).

### a. City of Chattanooga

The Tennessee Governmental Tort Liability Act ("TGTLA") "removes immunity for negligent actions of employees unless such actions were related to discretionary functions or certain enumerated intentional torts, including infliction of mental anguish." *Arbuckle v. City of Chattanooga*, 696 F.Supp.2d 907, 930 (E.D. Tenn. 2010). The TGTLA also creates immunity for the City of Chattanooga for intentional infliction of emotional distress. *Sallee v. Barrett*, 171 S.W.3d 822, at 829 (Tenn. 2005); *see also* Tenn. Code Ann. § 29-20-205(2). Under Tenn. Code Ann. § 29-20-205(2), a governmental entity is immune from suit, however, for the following acts: "false imprisonment . . . false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights." Because Ramsey's negligence infliction of emotional distress claim arises out her civil rights action, the Court finds the City is immune for that claim as well. Therefore, the Court will **DISMISS** these claims in favor of the City.

### b. Individual Officers

Because all of the officers were acting within the scope of their employment during the

14

events giving rise to this case, the Court finds they are also immune under TGTLA with respect to Ramsey's claim for intentional emotional distress to the extent she brings suit against the officers in their official capacities. *Wilkerson v. Chattanooga*, No. 1:09-CV-168, 2010 WL 2735689, at *11 (E.D. Tenn. July 12, 2010). With respect to Ramsey's claim of intentional infliction of emotional distress against the officers in their individual capacities and her claim for negligent infliction of emotional distress, Ramsey fails to make any specific allegations in her complaint. Indeed, the Court finds she has not created a genuine dispute as to whether Officers Zendejas or Officer Rawson intentionally or negligently caused her emotional injury. The Court will **DISMISS** these claims against Officer Zendejas and Officer Rawson.

On the other hand, the Court finds there is a genuine issue of material fact as to whether Officer Avery intentionally inflicted emotional harm on Ramsey in his individual capacity. In his motion for summary judgment, Officer Avery argues Ramsey cannot prevail on her claim of intentional emotional distress because she cannot show she suffered from a severe emotional injury (Court File No. 35).

Where a plaintiff alleges intentional infliction of emotional distress, "the mental injury must be 'so severe that no reasonable person would be expected to endure it." *Launius v. Wells Fargo Bank, N.A.*, No. 3:09-CV-501, 2010 WL 3429666, at *5 (E.D. Tenn. Aug. 27, 2010) (quoting *Miller v. Willbanks*, 8 S.W.3d 607, 625 (Tenn. 1999)). Indeed, Ramsey did not seek a mental health evaluation until a year after the events regarding this case occurred (Court File No. 40-1 at 4). Although Ramsey was prescribed Prozac and Seroquel for post traumatic stress disorder, her treatment at the Johnson Mental Health Center appeared to last only a few months (Court File No. 31, Affidavit of Bruce E. Dyer, Sr., APN). Specifically, Ramsey testified she only had two or three

15

appointments (Court File No. 40-1 at 51). Ramsey's last appointment was on January 20,2010 and she missed two appointments scheduled for March 2010 (Court File No. 31). Nonetheless, because Ramsey was provided medication and diagnosed with a disorder, the Court finds this creates a genuine dispute, and the Court will **DENY** Officer Avery's motion for summary judgment with respect to Ramsey's claims for intentional infliction of emotional distress. In contrast, because Ramsey only alleges Officer Avery exerted excessive force against her, the Court will **DISMISS** her claim of negligent infliction of emotional distress against Officer Avery as well.

### 2. Property Damage

Finally, Officer Avery contends he also entitled to summary judgment regarding Ramsey's claim for property damage. Ramsey alleges Officer Avery crashed into her car that was "legally parked on the street" (Court File No. 1-1 at 4). Nonetheless, Ramsey admits she is not the owner of the vehicle that was damaged (Court File No. 21-4 at 6). Accordingly, Ramsey has failed to allege any facts to show that she has standing regarding this cause of action. The Court will **DISMISS** this claim as to Officer Avery.

## IV. CONCLUSION

For the reasons stated above, the Court will **GRANT** Officer Rawson and the City of Chattanooga's motion for summary judgment (Court File No. 32). All claims against Officer Rawson and the City of Chattanooga will be **DISMISSED**. The Court will **GRANT IN PART** and **DENY IN PART** Officer Avery and Officer Zendejas's motion for summary judgment (Court File No. 34). All claims against Officer Zendejas will be **DISMISSED**. The Court will **DISMISS** Ramsey's claims for negligent infliction of emotional distress and property damage against Officer

Avery.

An Order shall enter.